ADOPTION OF THEODORE[1] & others.

No. 93-P-1168.

Suffolk. February 8, 1994. - April 21, 1994.

Present: DREBEN, JACOBS, & GILLERMAN, JJ.

*Adoption*, Dispensing with parent's consent. *Parent and Child*, Dispensing with parent's consent to adoption. *Evidence*, Child custody proceeding.

A Probate Court judge's denial without a hearing of a mother's motion for relief from judgments dispensing with her consent to adoption of her three children was vacated and the matter remanded for an evidentiary hearing and reconsideration of the children's best interests in light of changes in the mother's circumstances in the intervening years since the judgments entered, where the children had not yet been placed for adoption. [358-359]

PETITIONS filed in the Suffolk Division of the Probate and Family Court Department on August 2, 1989.

The cases were heard by *Elaine M. Moriarty*, J., and a motion for relief from judgments of adoption, filed on July 16, 1993, was heard by her.

*Sharon Feigenbaum* for the mother.

*Diane Pasquaretta* for Department of Social Services.

*Charles G. Murphy* for the minors.

GILLERMAN, J. In a ninety-page memorandum, including 247 findings of fact and eighteen conclusions of law, the judge carefully worked her way through the history and circumstances of the parents and their four children.[2] In brief, the judge found that the father,[3] diagnosed by a court-ap-

---

[1]The name is fictitious.

[2]One of the children, then age fifteen, expressed a desire not to be adopted. The judge ruled that his consent to adoption would be required, and the judge denied the petition as to him.

[3]The father joined in the notice of appeal, but filed no brief. We consider only arguments advanced by the mother.

pointed psychiatrist as having paranoid schizophrenia, was profoundly ill. He "suffers [the judge found] from impairments of social conduct and interpersonal relationships, and has a need to control his children, his [w]ife and all agencies he comes in contact with. He suffers delusions of persecution, characteristic of paranoid schizophrenia. . . . [The father's] illness manifests itself in constant and profound suspicion." The judge concluded that the "evidence is clear and convincing that he is currently unfit to parent his children." There is no argument to the contrary. See note 3, *supra*.

The evidence regarding the mother is quite different. The judge found that she "is a bright, articulate woman, a graduate of the University of Pennsylvania. She earned a Master's degree in June, 1969, at the University of Rochester. . . . [S]he has many good qualities as a parent. . . . [She] clearly loves her children a great deal and there have been marked displays of love and affection among them. . . . In many ways she is capable of assessing individual talents of her children and differences in needs among them. However, she is unable to act on this knowledge to provide for her children's physical and emotional needs consistently while [the father] remains a presence in her life and home. . . . [The mother] denies or minimizes the very serious and obvious problems in her relationship with [the father] and often closes her eyes to the reality of his conduct. She is unable to protect them from their father. . . . [The mother] suffers [from] a dependent and passive personality organization. She is allied with [the father] in spite of his symptoms, his abuse, and the fact that his illness had led to the removal of their children."[4] The judge also found that the mother had reported that the father "had beaten her long and frequently and terrorized the children. . . . [I]t is quite unlikely that she will be able to exert any autonomy from [the father] to cope for herself and children. . . . Her unwillingness or her inability to disassociate herself from [the father] constitutes . . . conduct or [a] condition seriously detrimental to the children, rendering her

[4]The Department of Social Services was awarded temporary custody of the four children on June 3, 1988.

unfit. . . . Were she the sole parent, with appropriate and substantial support services, she might be able to care for the children in the future. However, evidence is clear and convincing that [the mother] is not currently fit to parent the children in the actual circumstances and actual household in which they would live."

The judge's ultimate finding proceeds from these subsidiary findings. The "[c]hildren are in immediate need of a good, stable, consistent placement in a setting which can meet their individual needs. There is clear and convincing evidence before this court to show that [the parents] are currently unfit to [raise] their four children . . . [and the department's] plan for adoption . . . is in the [children's] best interests."

Finally, the judge concluded that it would not be in the best interests of the three children (whose consent to adoption was not required) "to have any post-adoption visitation with their biological parents." On October 31, 1991, the judge then allowed the petition as to three of the four children, and denied it as to the child who did not want to be adopted.

The facts found by the judge are not in serious dispute; it can hardly be contended that any of the judge's findings was clearly erroneous. But the matter does not end there. Over two years have gone by since final judgment was entered in this case, and, we were told at the argument, the children have not yet been placed for adoption. In the intervening years, the mother left the home of her husband, entered counseling and battered women's support groups and on July 12, 1993, obtained a divorce from her husband.

Two days later, the mother filed a motion for relief from the previous judgments. Compare Mass.R.Dom.Rel.P. 60(b)(5) (1975).[5] The motion was supported by the mother's

[5]Neither the Massachusetts Rules of Domestic Relations Procedure, nor the Massachusetts Rules of Civil Procedure is applicable in adoption cases. We proceed by analogy to the Massachusetts Rules of Domestic Relations Procedure.

Rule 60(b)(5) is applicable where "it is no longer equitable that the judgment should have prospective application . . . ."

affidavit that, having obtained her divorce, she is entirely independent of her former husband. The relief sought by the motion was an order that the department "set up immediate visitation between the mother and the children, with the ultimate goal of determining whether this family can be reunited, without harm to the best interests of the children." After argument, the motion was denied. No evidence was taken.

It is not possible for us to give thoughtful and serious consideration either to the mother's motion — her affidavit is far too skimpy — or to the judge's decision to deny the motion in the absence of an evidentiary hearing or a statement of the judge's reasons.

Especially troubling is the judge's finding that were the mother the sole parent, then, with appropriate support services, "she might be able to care for the children in the future." *Adoption of Carlos*, 413 Mass. 339, 350 (1992), teaches that "[a] judge may properly be guided by evidence demonstrating reason to believe that a parent will correct a condition or weakness that currently disables the parent from serving his or her child's best interests. . . . None of our cases . . . should be construed . . . as limiting the inquiry to parental fitness at the time of trial."

Given the fact that the children have not yet been placed for adoption, and that the mother has finally separated herself from her husband, it is necessary that the judge (whose patience and understanding have been fully demonstrated) provide the mother with an opportunity to demonstrate at an evidentiary hearing that the recent turn of events in her life, which appear to be striking, are sufficient to justify the conclusion that she is fit to parent her children and, if so, that it would be in the children's best interest to be returned to their mother. See *Adoption of Carlos, supra* at 351.

For these reasons, the order denying the mother's motion is vacated, and the case is remanded for an evidentiary hearing and reconsideration of the motion. If after hearing the evidence, the trial judge denies the mother's motion, the

judgments should be affirmed; otherwise, the final judgment shall be modified as ordered by the judge.

*So ordered.*