NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-313

ADOPTION OF HILMA (and four companion cases[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On appeal from decrees terminating her parental rights as to the five children, the mother asserts that the trial judge (i) violated the mother's due process rights by terminating her parental rights, sua sponte, in a proceeding that was directed solely to custody (and care and protection) rather than to termination, and (ii) erred in concluding that the mother was unfit at the time of trial.[2]  We discern no error of law or abuse

---

[1] Adoption of Georgia, Adoption of David, Adoption of Edward, and Adoption of Francis.

[2] Three of the five children also appeal from the decrees; one of the children appears as an appellee, along with the Department of Children and Families; the remaining child withdrew her brief as an appellant and took no position in this appeal.  Though the appellant children's brief assigns error to the termination of Francis's father's parental rights, the brief offers no substantive argument in support of the assertion of error.  We note that Francis's father was incarcerated throughout the trial, that he supported return of the children to the mother but did not seek custody of the children himself, and that the judge drew a negative inference from his failure to appear or testify at trial, and her memorandum of decision noted his extensive criminal history (which included open charges of child pornography and rape of a child).

of discretion, and accordingly affirm the decrees terminating the mother's parental rights.

Discussion. 1. Termination. In proceedings to terminate parental rights, "[d]ue process is satisfied by providing notice and an opportunity to be heard." Adoption of Talik, 92 Mass. App. Ct. 367, 375 n.9 (2017). See Adoption of Simone, 427 Mass. 34, 39 (1998), quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965) (parents must be afforded "an opportunity to be heard 'at a meaningful time and in a meaningful manner'"). The mother contends that the issue of dispensing with the need for her consent to adoption was not properly before the court because the Department of Children and Families (department) was not seeking termination at the time of trial, and as a result, she was not given adequate notice or opportunity to address the issue of her fitness to parent. We disagree.

The mother was served in hand on the date of filing of the care and protection petition; consistent with G. L. c. 119, § 26 (b) (4), the summons she received on that date gave explicit notice that a possible result of care and protection proceedings is the dispensation with the need for the mother's consent to adoption of the children and the termination of the mother's parental rights. Later in the trial, a second summons containing the same notice was issued, ordering the mother's presence in person on the following court date to facilitate her

2

full participation at trial and allow her to be heard on her motions for recusal and dismissal.[3]  Finally, the mother's stand-by counsel confirmed during trial in a colloquy with the judge that the mother was "well aware" of the possibility of termination of her parental rights as a potential outcome of trial.  "The express language of G. L. c. 119, § 26(4), permits, and in some instances mandates, that the judge, upon a finding of the need of care and protection, consider and order the dispensation of the need for parental permission to adopt."[4] Adoption of Donald, 49 Mass. App. Ct. 908, 909 (2000).  We are unpersuaded by the mother's argument that she did not receive adequate notice and opportunity to be heard on the issue of termination.[5]  See id. ("nothing in G. L. c. 119, § 26(4),

---

[3] Notably, the trial judge's decision to order the mother to appear in person came after an extensive colloquy with counsel for the parties and the mother's stand-by counsel, all of whom expressed reticence to proceed with trial where the mother could only participate via telephone and was intermittently absent during the proceedings, citing potential due process concerns arising from mother's pro se status.

[4] This express statutory language is now found at G. L. c. 119, § 26 (b) (4).

[5] The mother's reference to Adoption of Reid, 39 Mass. App. Ct. 338 (1995), is unavailing.  In that case, the joint pretrial memorandum cited the questions to be tried as "whether . . . to approve the department's plan for [the child's] guardianship" and "whether the mother is presently unfit," without mention of termination or adoption. Id. at 339 & n.3.  The judge there erred by terminating the mother's parental rights, where the parties had agreed to try the matter as a guardianship petition. See id. at 341-342.  Here, the department stated clearly in its opening statement that this would be a full trial on the issue

requires that a separate petition or motion be filed [by the department] before the judge may act").

The mother and appellant children also argue that the judge erred in terminating the mother's parental rights where there was no adoption plan proposed by the department for the judge to consider as required by G. L. c. 210, § 3 (c). Though a judge must meaningfully evaluate and consider any proposed adoption plan submitted by the department, we do not understand the language of G. L. c. 210, § 3 (c), to require the department to submit a permanency plan as a prerequisite to the judge's exercise of her statutory authority under G. L. c. 119, § 26 (b) (4). The trial judge did not err in issuing decrees terminating the mother's parental rights upon finding clear and convincing evidence of the mother's current unfitness and that her unfitness was likely to continue into the indefinite future.[6]

2. The mother's fitness. "When reviewing a decision to terminate parental rights, we must determine whether the trial

_____

of mother's ability to parent, with the department seeking custody of all five children.

[6] Though three of the children assert that the trial judge erroneously found "that the permanent separation of the siblings from each other was in their interests," our reading of the judge's thorough memorandum of decision reveals the contrary. In any event, as the department observes, nothing in the decrees precludes the children from requesting modification of the visitation order to further adjudicate questions of placement or visitation (or both) or, if they are over the age of twelve, filing petitions for sibling visitation pursuant to G. L. c. 119, § 26B (b).

4

judge has abused [her] discretion or committed a clear error of law."  Adoption of Elena, 446 Mass. 24, 30 (2006).  A finding of unfitness must be supported by clear and convincing evidence.  See Adoption of Rhona, 63 Mass. App. Ct. 117, 124 (2005).  We accord deference to the trial judge's assessment of the credibility of the witnesses and the weight of the evidence.  See Adoption of Elena, supra at 31.  The mother and appellant children assert that the judge erred in finding sufficient evidence of the mother's unfitness by relying on stale evidence, improperly weighing the mother's refusal to engage in services offered by the department, and by drawing negative inferences from the mother's conduct at trial.  We disagree.

Though "isolated problems in the past or stale information cannot be a basis for a determination of current parental unfitness," a judge may consider a parent's prior history for its prognostic value.  Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption, 18 Mass. App. Ct. 120, 126 (1984).  The mother has an extensive history of contact with the department, demonstrating consistent and unaddressed parenting deficiencies, including physical abuse of the children, exposure of the children to domestic violence, failure to adequately supervise the children, and aggression towards department staff and school personnel.  The trial judge made specific findings detailing the mother's failure to address these deficiencies or

5

gain insight as to their harm to the children, up to and including the time of trial.[7]  The judge's findings of fact, taken as a whole, do not indicate an undue reliance on the mother's past conduct in reaching the ultimate finding of the mother's current unfitness.

The trial judge was also permitted to consider the mother's refusal to engage in services offered by the department and her open hostility towards department staff in reaching her finding of unfitness.  See Adoption of Rhona, 63 Mass. App. Ct. at 126. We think this is especially true where the mother was granted conditional custody of the three youngest children, after they had been initially removed from her care due to an incident of physical abuse against one of her older children.  The mother's failure to engage in services, acknowledge her harmful behaviors, or gain insight into the adverse effects of violence and aggression on the children was relevant to the judge's determination of her continuing unfitness and was appropriately

---

[7] While it is true that there had been no reports of further physical abuse against the younger three children during the mother's period of conditional custody leading up to trial, "[a] judge . . . does not have to wait for a disaster to happen," Custody of Michel, 28 Mass. App. Ct. 260, 269-270 (1990), in reaching a decision to terminate parental rights if past conduct and present behavior indicate that the children are "at serious risk of peril from abuse, neglect, or other activity harmful to the child[ren]" (citation omitted), Adoption of Zoltan, 71 Mass. App. Ct. 185, 188 (2008).

6

considered.  See Care & Protection of Vick, 89 Mass. App. Ct.
704, 708.

Finally, we review a trial judge's decision to draw an
adverse inference from a parent's conduct at trial for abuse of
discretion.  See Adoption of Helga, 97 Mass. App. Ct. 521, 526
(2020).  In determining whether to exercise her discretion, the
judge as fact finder must "consider whether such an inference is
fair and reasonable based on all the circumstances before her"
(quotation and citation omitted).  Adoption of Talik, 92 Mass.
App. Ct. at 372.  Throughout the mother's sporadic participation
at trial, she was continuously hostile and disruptive, and on
numerous occasions swore at the judge and advocates or abruptly
disconnected from the zoom call or telephone bridge line.  The
trial judge made repeated attempts to ensure the mother's full
participation at trial despite the mother's direct refusals to
be cooperative and respectful.  The mother's behavior at trial
was consistent with the parenting deficiencies identified in the
findings of fact, and was fairly considered by the judge given
the circumstances.  See id.  We discern no abuse of discretion.[8]

---

[8] For the same reasons, we also discern no abuse of discretion in
the judge's denial of the mother's oral motion for recusal.
Neither the trial transcript nor the judge's memorandum of
decision indicates an animus by the judge directed at the mother
or a desire to punish the mother for her conduct during trial.
Rather, the record before us highlights the judge's commitment
to protecting the mother's rights to be fully heard at trial,

Conclusion.  The trial judge made proper assessments of the credibility of the witnesses and the weight of all the evidence, and her memorandum of decision "demonstrate[es] that she has given the evidence close attention."  Adoption of Nancy, 443 Mass. 512, 514-515 (2005).  We see no reason to disturb the judge's conclusion that the evidence clearly and convincingly demonstrated the mother's present and ongoing unfitness.  We accordingly affirm the decrees.

Decrees affirmed.

By the Court (Green, C.J., Ditkoff & Hodgens, JJ.[9]),

*Joseph F. Stanton*

Clerk

Entered:  August 22, 2023.

---

and the findings of fact fully credit the positive aspects of the mother's parenting abilities.
[9] The panelists are listed in order of seniority.

8